IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 14-CR-30032-MJR |
| ) | |
| LEANDRO VELAZQUEZ, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

  A.  Introduction and Procedural Overview

  In February 2014, a grand jury in the Southern District of Illinois indicted Leandro Velazquez (Defendant) on a charge of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. 1349, in connection with an alleged scheme involving telemarketing sales of vacation timeshare interests. The scheme allegedly spanned a time period of early December 2007 through mid-July 2011 and occurred, inter alia, in the Illinois counties of St. Clair, Madison, Clark, Franklin, Jasper, Massac, and Saline (all of which lie within the Southern District of Illinois). The indictment further alleged that Defendant and others conspiring with him made calls in which they falsely represented to timeshare owners that the callers had found buyers for the owners' timeshare interests, that the callers solicited fees from the owners (purportedly to cover closing costs and related expenses), that the promised sales never occurred, and that no owner's timeshare was ever successfully sold. Instead, Defendant and his co-conspirators

"simply pocketed the fees, with a portion going to individual telemarketers and managers in the conspiracy" (Doc. 6, pp. 1-2).

Defendant initially appeared and was arraigned in this Court on March 25, 2014. He waived a detention hearing, was ordered detained, and was found unable to afford his own attorney. Counsel (attorney Robert Elovitz) was appointed for Defendant, a not guilty plea was entered, and trial was set for May 19, 2014. Defendant obtained continuances of the trial setting. He also moved for the appointment of new counsel. The latter request was initially denied, but in July 2014, attorney Elovitz was allowed to withdraw and attorney Christopher Threlkeld was appointed to represent Defendant.

On September 17, 2014, a superseding indictment was returned against Defendant (Doc. 48). It contained the conspiracy to commit mail and wire fraud charge in violation of 18 U.S.C. 1349 (Count 1) and added a charge of conspiracy to commit money laundering offenses in violation of 18 U.S.C. 1956 (Count 2).[1] Defendant was arraigned on the superseding indictment on October 3, 2014 and entered a not guilty plea. Following a status conference/hearing held the same day, jury trial was continued to January 12, 2015, with a final pretrial conference set January 7, 2015.

Defendant twice indicated his desire to enter a guilty plea, but both plea hearings (October 16, 2014 and October 31, 2014) were canceled when Defendant changed his mind. Around the same time, Defendant again sought the appointment of new counsel.

---

[1] Both the original and the superseding indictment also sought forfeiture and alleged that $6,293,932 was the value of proceeds obtained by Defendant in the course of the offense described in Count 1.

The undersigned held a hearing on November 13, 2014, at which Defendant withdrew his request for appointment of a new lawyer. Trial remains set January 12, 2015.

Now before the Court is a motion and supporting brief filed by Defendant (through counsel) seeking to change the venue of this case, specifically to transfer the case from the Southern District of Illinois to the Middle District of Florida (Docs. 69-70). The motion ripened with the filing of a November 25, 2014 response by the United States of America (the Government). As stated below, the Court denies the motion.

**B.** <u>Analysis</u>

In his motion, Defendant relies on Federal Rule of Criminal Procedure 18 and Federal Rule of Criminal Procedure 21(b). His supporting memorandum also references "Article 3, section 2" of the United States Constitution (Doc. 70, p. 2 & p. 6). The crux of Defendant's argument is that the conduct alleged in Count 2 of the superseding indictment "took place solely within the State of Florida," Defendant's alleged co-conspirators are located in the State of Florida, and "Defendant has a right to be tried on that Count in the State of Florida" (Doc. 70, p. 6). Defense counsel argues that the factors relevant to a venue transfer analysis weigh in favor of transfer. The Court is not persuaded.

Federal Rule of Criminal Procedure 18 designates the place for prosecution and trial:

> Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed. The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice.

Rule 18 echoes a concept contained two places in the United States Constitution. Article III, Section 2, Paragraph 3 of the Constitution states that all criminal trials (other than cases of impeachment) must be by jury, and "such Trial shall be held in the State where the said Crimes shall have been committed." The Sixth Amendment decrees that in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury "of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." **U.S. CONST. amend. VI.**

Federal Rule of Criminal Procedure 21 governs motions to *transfer* venue of federal criminal cases for trial. It contains four subsections – (a) through (d). Rule 21(a) addresses transfers based on prejudice. *See, e.g., Skilling v. United States,* **561 U.S. 358, 378 n.11 (2010) (Rule 21(b) instructs that a court must transfer the proceeding to another district if "so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there.").** That subsection is *not* invoked or relied upon by Defendant in the case at bar. He does not claim that he cannot obtain a fair trial in the Southern District of Illinois.

Rather, Defendant relies on Rule 21(b), which provides that upon the defendant's motion, the court may transfer the proceeding "to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." **FED. R. CRIM. P. 21(b).** Rule 21(d) prescribes the time in which to file a motion to transfer venue – it is to be filed at or before arraignment, unless the court or an applicable rule otherwise permits.

The Government argues that Defendant's Rule 21 motion is late. Technically, that is correct. The motion was not filed at or before arraignment -- either the March 2014 arraignment on the original indictment or the October 2014 arraignment on the superseding indictment. No Rule permits a later filing here, and the only Order setting motion deadlines in this case (the March 25, 2014 Order Regarding Pretrial Discovery and Motion Practice, Doc. 20) called for all non-discovery motions to be filed within 21 days of arraignment – again, a period long-expired as to either the original or the superseding indictment. Counsel should not disregard deadlines set in the Federal Rules or orders entered by this Court. At the very least, parties must move for leave to file late motions, if those deadlines have elapsed. This was not done here.

That said, current defense counsel entered the case relatively recently, and the November 21, 2014 motion implicates significant constitutional principles. So the Court reaches the merits of the motion. Having done so, the Court concludes that transfer of this case is not warranted. Defendant has not shouldered his burden of establishing that transfer is justified. The United States Court of Appeals for the Seventh Circuit has summarized that burden as follows – the defendant must show that, "all relevant things considered, the case would be better off transferred to another district." *In re Balsimo*, **68 F.3d 185, 187 (7th Cir. 1995).**

Federal caselaw supplies a list of factors to guide assessment of a Rule 21(b) (i.e., a convenience-based) motion to transfer venue. First set forth in *Platt v. Minnesota Mining & Mfg. Co.,* **376 U.S. 240, 243-44 (1964),** those factors are: (1) the location of the defendant; (2) the location of possible witnesses; (3) the location of events likely to be in

issue; (4) the location of documents and records likely to be involved; (5) the disruption of the defendant's business unless the case is transferred; (6) the expense to the parties; (7) the location of counsel; (8) the relative accessibility of place of trial; (9) the docket condition of each district involved; and (10) any other special element which might affect the transfer.  *Platt,* **376 U.S. at 244-45.**  No single consideration is dispositive in this analysis.  Rather, the district court must "try to strike a balance and determine which factors are of the greatest importance" in the case.  *United States v. Morrison,* **946 F.2d 484, 490 n.1 (7th Cir. 1991),** *quoting United States v. Maldonado-Rivera,* **922 F.2d 934, 966 (2nd Cir. 1990), and** *United States v. Stephenson,* **895 F.2d 867, 875 (2nd Cir. 1990).**

So, we start with the proposition that the proper venue for criminal actions is the district in which the offense was committed, *Morrison,* **946 F.2d at 490,** and then decide whether the facts (as to convenience and the interest of justice) support a venue transfer here.  As to the first inquiry, venue is proper in *any* district in which an offense was begun, continued, or completed; and any offense involving the use of the mails or transportation in interstate commerce is a continuing offense which can be prosecuted in any district from, through, or into which such commerce or mail moves.  *See* **18 U.S.C. 3237(a);** *United States v. Sidener,* **876 F.2d 1334, 1337 (7th Cir. 1989).**  As to the second inquiry, transfer under Rule 21(b) for the convenience of parties and witnesses is a question for realistic and fair consideration, committed to the sound discretion of the district court.  *United States v. Zylstra,* **713 F.2d 1332, 1336 (7th Cir. 1983).**

Clearly, the Southern District of Illinois is a proper venue for Defendant's trial. This *is* a district in which the offenses with which he is charged were "committed," within the meaning of Rule 18 and as required by the Constitution. For continuous crimes like conspiracy, Congress has provided and the law is well-settled that not every element of the crime needs to be committed in the district. Venue lies in any district where the offense was begun, the offense continued, or the offense was completed. *See United States v. Gonzalez*, 683 F.3d 1221, 1224 (9th Cir. 2012), *cert. denied*, -- U.S. --, 133 S. Ct. 1491 (2013), *citing* 18 U.S.C. 3237(a).[2]

As the Supreme Court of the United States succinctly stated:

> "[W]here a crime consists of distinct parts which have different localities, the whole may be tried where any part can be proved to have been done."

*United States v. Rodriguez-Moreno*, 526 U.S. 275, 281 (1999), *quoting United States v. Lombardo*, 241 U.S. 73, 77 (1916).

The instant case involves a large-scale telemarketing fraud conspiracy allegedly orchestrated by Defendant (who lived in Orlando, Florida) and targeting thousands of vacation timeshare owners throughout the entire United States, including at least ten identified victims within the Southern District of Illinois. Venue is proper here, because although the crime charged in Count 1 (conspiracy to commit mail and wire fraud in

---

[2] So, for instance, Nevada was a proper venue for trial on a charge of conspiracy to possess and distribute cocaine, where the defendant never even set foot in that state (and the actual distribution of the drugs occurred totally in California), because Nevada was the site of the initial agreement and the place of subsequent phone calls by defendant's co-conspirators planning a drug transaction. *Gonzalez*, 683 F.3d at 1224, *citing United States v. Corona*, 34 F.3d 876, 879 (9th Cir. 1994).

violation of 18 U.S.C. 1349) may have *begun* in Florida via phone calls and mail generated by telemarketers in Florida, the crime was *completed* in this District when phone calls were answered here, contracts were signed here, and money was stolen here.

This is true (venue is proper) as to Count 2 as well, which charges conspiracy to commit money laundering in violation of 18 U.S.C. 1956.  As noted above, a conspiracy charge can be brought in any district where the conspiracy was begun, continued, or completed.  Plus, § 1956 contains its own venue provision.  Section 1956(i)(1)(B) allows prosecution of money laundering conspiracy offenses in:

> any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted.

The evidence indicates that Defendant deposited the proceeds of his timeshare resale activities (including the proceeds from Southern Illinois victims) into a Florida bank account, endeavoring to conceal the fact the funds were proceeds of illegal activity. Investigators traced the funds *from an Illinois victim* into and out of an account at the Florida bank.  Venue, therefore, is proper in this District, where a portion of the unlawful proceeds were obtained.

So, venue is proper (as to both counts of the superseding indictment) in the Southern District of Illinois.   Conducting the trial in this District would not contravene statutory requirements or offend constitutional principles.

This leaves the question, under Rule 21(b), of whether transfer would serve the convenience of the parties, victims, and witnesses and advance the interest of justice. It would not. The *Platt* factors do not weigh in favor of transfer to the Middle District of Florida.

**Factor 1: Location of Defendant.** Defendant Velazquez was a resident of Florida but now is incarcerated in Salem, Illinois, within this District, roughly 70 miles from the courthouse where trial is scheduled to be held. Florida may have been Defendant's home prior to his pretrial detention, but he cites no case for the proposition (and federal law does not recognize) that he is entitled to be tried in his home district. As the Seventh Circuit has reminded, venue is not a matter for the defendant's choice, based on where he believes a jury may be more sympathetic or favorable to him. *United States v. Jordan,* **223 F.3d 676, 686 (7th Cir. 2000).**

**Factor 2: Location of Possible Witnesses.** Defendant asserts that "witnesses needed to rebut the allegations in the Superseding Indictment are, nearly without exception, residents of the state of Florida" (Doc. 70, p. 3). But the motion and supporting brief do not identify these witnesses or name a single person who will be called at trial and would be inconvenienced by trial in this District. On the other hand, the record before the Court reveals that at least ten victims of the telemarketing scheme live in the Southern District of Illinois. At this point, the Government anticipates calling at trial at least four victims to testify about how they were defrauded. None of these victims lives in Florida. Two of them live in Illinois. The Government also intends to present the testimony of three investigators, all of whom work in Illinois (two in

Fairview Heights and one in Chicago), plus several incarcerated individuals (including Jason Falkner and Arantzazu Atorrasagasti, both of whom are incarcerated in Illinois correctional facilities).  Other potential co-conspirator witnesses reside in Florida, but Defendant – who bears the burden on this venue *transfer* motion – has not shown that a Florida trial will be more convenient for the witnesses.  This factor tips in favor of the Government.

**Factor 3:  Location of Events Likely to be in Issue.**   Events in question occurred in both Florida and Illinois.   The nerve center of Defendant's operation was in the Orlando, Florida area.  But the alleged crimes were completed in the Southern District of Illinois.  At least ten victims live in this District.  This factor does not warrant transfer; at best, it is a "break even" proposition for Defendant.

**Factor 4:  Location of Documents and Records.**    The Government notes that is will "rely heavily on company records located in Illinois" (Doc. 71, p. 3).  The Federal Trade Commission conducted an investigation of Defendant's companies (multiple businesses operating under the umbrella name "National Solutions") and filed a civil complaint against those businesses.   The businesses were dissolved, and the records were seized and examined by the FTC.  The documents considered pertinent to this prosecution were scanned and sent to the investigators here.  The original documents were shipped by the FTC's receiver in Tampa, Florida to this District, where they remain.  Obviously, most of the documents are in electronic format (so their location is not particularly significant), but the paper documents are located in the Southern District of Illinois, tipping this factor in the Government's favor.

**Factor 5: Disruption of the Defendant's Business if Case Not Transferred.** This factor does not appear relevant here, where Defendant's businesses were dissolved, and Defendant is incarcerated. This factor does not support transfer.

**Factor 6: Expense to the Parties.** As noted above, the Government could call up to four witnesses from Florida at trial but expects to call seven witnesses from Illinois. Most of the Illinois witnesses live within easy driving distance of the East St. Louis courthouse. Transfer of the case to Florida will cost the Government (and ultimately the taxpayers) more than trial in the Southern District of Illinois. This factor cuts against transfer.

**Factor 7: Location of Counsel.** Defendant's attorney, appointed under the Criminal Justice Act (18 U.S.C. 3006A), maintains his office in Edwardsville, Illinois, within this District. If the case were transferred, local CJA counsel would be appointed in Florida. However, the entire prosecution team would have to travel to Florida for trial. The Government is represented by the U.S. Attorney's Office for the Southern District of Illinois, with offices in Fairview Heights, Illinois (about 12 minutes from the East St. Louis courthouse). This U.S. Attorney's Office has significant experience prosecuting timeshare resale scams, including many other cases involving National Solutions. Without doubt, the transfer of this case to the Middle District of Florida would greatly inconvenience the attorneys, investigators, analysts, and legal assistants handling the prosecution of this matter. This factor weighs heavily against transfer.

**Factor 8: Relative Accessibility of the Place of Trial.** As already described, trial witnesses will be coming from both Florida and Illinois. Both the Middle District of

Florida (Orlando airport) and the Southern District of Illinois (St. Louis airport) are easily accessible. The Court finds this factor is neutral in the analysis. It does not weigh for or against transfer.

**Factor 9: Docket Condition of Transferor and Transferee District.** Defense counsel presents the Federal Court Management Statistics (compiled by the Administrative Office of the United States Courts) for the 12-month period ending June 30, 2014. This information shows a slightly higher felony caseload of each Southern District Illinois judge, as compared to Middle District of Florida judges. Based on this data, Defendant submits that factor 9 weighs "slightly in favor of transfer" (Doc. 70, p. 5). The Government correctly counters that this *Platt* factor is not as concerned with overburdening judges as it is with ensuring that the particular defendant's trial is not unnecessarily delayed (Doc. 71, pp. 13-14). The undersigned concludes that although he may have a marginally heavier criminal docket than his colleagues in the Middle District of Florida, there is a good chance that transfer of the case would result in a continuance of the firm January 12, 2015 trial setting in this District. The undersigned has eight trials set to commence on January 12th, and this case has been designated "first out," meaning it will go (absent a guilty plea by Defendant). The same cannot be said for a trial in 30 days in Florida, if the case is transferred (which would require physically transporting Defendant, appointing new defense counsel, and allowing the new attorney to get up to speed on the case and the voluminous discovery herein). This factor weighs against transfer.

**Factor 10: Other Special Elements which May Affect Transfer.** Defendant argues that two special circumstances militate for transfer – the expense of transporting and lodging out-of-state witnesses if the trial is held in this District, and the fact that the alleged conduct underlying Count 2 occurred exclusively in Florida (Doc. 70, pp. 5-6). The Court already has discussed and rejected both of these contentions above and similarly finds them unavailing here. The Court finds no special elements meriting transfer of this case to the Middle District of Florida.

Additionally, as to the argument regarding the relative expense of trial there versus here, Defendant's memo requests that *Count 2* be tried in Middle District of Florida (Doc. 70, p. 6, emphasis supplied: "Defendant has a right to be tried *on that Count* in the State of Florida"). If that is construed to mean that the counts would be severed, with trial on Count 1 here and trial on Count 2 in Florida, such severance would give rise to a "'multiplication of litigation' resulting in great inconvenience to the witnesses involved as well as considerable expense to the government." *Morrison,* **946 F.2d at 489-90,** *quoting Zylstra,* **713 F.2d at 1336.**

As to transfer of the *entire* case to the Middle District of Florida for trial, at least ten victims are located in the Southern District of Illinois, key Government witnesses are located in Illinois, and moving trial to Florida would result in increased expenses and quite likely delay the trial. Plus, the record is devoid of evidence that the Southern District of Illinois is not a reasonably convenient forum for the parties and their respective counsel. *See United States v. Quiles-Olivo,* **684 F.3d 177, 185 (1st Cir. 2012);** *United States v. Walker,* **665 F.3d 212, 224 (1st Cir. 2011).** Simply stated, Defendant has

not demonstrated that a transfer of venue is necessary for the convenience of the parties and witnesses and that it is in the interest of justice, as required under Rule 21(b).

### C. Conclusion

"The Sixth Amendment secures to criminal defendants the right to trial by an impartial jury. By constitutional design, that trial occurs 'in the State where the ... Crimes ... have been committed.'" *Skilling,* **561 U.S. at 378,** *quoting* **U.S. CONST., Art. III, § 2, cl. 3.** In the case *sub judice,* offenses with which Defendant is charged were committed in this District, so holding trial here does not offend constitutional principles.

As to the convenience inquiry under Rule 21(b), the undersigned has carefully considered all the facts and circumstances in concluding that the Southern District of Illinois is "just as convenient a forum as any other," including the Middle District of Florida. *Sidener,* **876 F.2d at 1338.** Defendant has not established, and the record before the Court does not support the premise, that transfer to the Middle District of Florida would further the convenience of the parties, victims, or witnesses and promote the interest of justice. **FED. R. CRIM. P. 21(b).** Accordingly, the Court **DENIES** Defendant's November 21, 2014 motion to transfer (Doc. 69).

IT IS SO ORDERED.

DATED December 10, 2014.

                                                  **s/ Michael J. Reagan**
                                                  Michael J. Reagan
                                                  United States District Judge